**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RESIDENTIAL WARRANTY COMPANY LLC,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 25-00302-KD-B** |
| | ) | |
| **VIRGINIA WHITE, Individually, and in her capacity as Power of Attorney for Warren Simmons,** | ) | |
| | ) | |
| **Defendant/Counterclaim Plaintiff.** | ) | |

**ORDER**

This action is before the Court on Plaintiff/Counterclaim Defendant Residential Warranty LLC's (RWC) Motion to Compel to Arbitration the counterclaims by Defendant Virginia White, individually, and in her capacity as power of attorney for Warren Simmons ("White"), Motion to Dismiss the Putative Class Counterclaims, and Motion to Stay this Proceeding as to the arbitration (doc. 45), Memorandum in Support (doc. 46),[1] and RWC's Reply Memorandum in Support (doc. 59).

Upon consideration, and for the reasons set forth herein, the Motion to Dismiss the Putative Class Counterclaims (doc. 45) is GRANTED. The Motion to Compel Arbitration of White's individual counterclaims (Id.) is GRANTED and the Motion to Stay this proceeding concerning White's individual counterclaims (Id.) is GRANTED. Accordingly, this action as

[1] White did not file a response to the Motions. She did file a "Response in Opposition to" RWC's Motion for Summary Judgment and a "Cross-Motion for Summary Judgement, Injunctive Relief, and Class Certification" (doc. 51). RWC interprets White's Response as "intended … to address both of RWC's motions (doc. 59, n. 1). RWC states that "[b]ecause the issues are intertwined, this reply memorandum is submitted in support of both of RWC's pending motions." (Id.).

to the individual counterclaims is stayed and the parties shall, on or before **February 11, 2027,** file a **joint report** to advise the Court as to the status of the arbitration.

I. Background

A. The Arbitration between White and RWC

White and Simmons executed a Purchase Agreement with DR Horton, Inc. – Birmingham to build a home. The Purchase Agreement stated that "[a]t closing], DR Horton would provide the buyers "with a written, ten-year limited warranty on the House administered by [RWC]" and that the "terms and conditions of, and exclusions from, the ten-year limited warranty shall be as set forth in that document published by RWC entitled, 'LIMITED WARRANTY, 10 YEAR LIMITED WARRANTY FOR NEW HOMES[.]'" (doc. 44-12, ¶ 14.a.) (capitalization in original).

White made a claim under the Limited Warranty.[2] She alleged certain construction defects in her home. RWC determined there were no "Major Structural Defects" and denied the claim. As a result, White's claim fell within the Limited Warranty's definition of an "Unresolved Warranty Issue". According to its terms, if there is an Unresolved Warranty Issue, the individual claimant must arbitrate pursuant to the arbitration provision in the Limited Warranty, which provides for arbitration pursuant to the FAA. Her claim was sent to arbitration (doc. 1, p. 2-5; doc. 1-4, Limited Warranty).

Then, on July 8, 2025, White "Individually and as Class Representative" filed a "Verified Demand for Arbitration and Injunctive Relief" in the arbitration proceeding (doc. 1-2). However, because the Limited Warranty did not provide for arbitration of class claims, on July 14, 2025, RWC wrote White and explained

[2] RWC is the administrator for claims under the Limited Warranty (doc. 1-4, p. 3).

> Your filings are in direct contravention of black-letter law of the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit, which hold that (1) the court, not an arbitrator, must decide whether the parties to an arbitration agreement have agreed to arbitrate class claims, (2) arbitration provisions that are silent as to class claims do not authorize class actions to proceed in arbitration, and (3) class actions cannot be pursued in any forum where the purported class plaintiffs are bound to arbitrate their disputes.

(Doc. 1-5).

White refused to withdraw the Demand in arbitration (doc. 1-6, July 15, 2025, letter from White to RWC).[3] On July 22, 2025, White filed a "Verified Motion for Class Certification of [RWC] Horton Homeowners and Request for Injunctive Relief" (doc. 1-3).

B. The action in this Court

On July 25, 2025, RWC filed the instant Complaint for Declaratory and Injunctive Relief in this Court (doc. 1). RWC "seeks declaratory and injunctive relief for the purpose of demonstrating an actual justiciable controversy between the parties, settling their rights under the Limited Warranty, status and/or other legal relations concerning the events described [in the Complaint], and prohibiting [White] from pursuing class claims in arbitration." (doc. 1, p. 7).

White filed a "Verified Answer and Counterclaim for Declaratory Relief [and] Injunctive Relief and Class Certification" (doc. 9). RWC then filed a Motion to Strike and a Motion for More Definite Statement (docs. 14, 15). In response, White filed a First Amended Verified

---

[3] White asserted that because the Home Purchase Agreement (HPA) had an arbitration provision stating the American Arbitration Association rules apply, and because the AAA rules allow a class action to proceed in arbitration if the arbitration provision is silent as to class actions, and because the arbitration provision in the Limited Warranty was silent as to class arbitration, she could proceed with a class action in the arbitration. The HPA arbitration provision does state that the purchaser and seller are subject to AAA Rules as to disputes arising from the HPA. However, that provision excluded the Limited Warranty stating: "Notwithstanding any other provision herein, any disputes arising under the Limited Warranty shall be mediated, arbitrated and/or judicially resolved pursuant to the terms, conditions, procedures and rules of that warranty program" (doc. 19-5, p. 5). The arbitration provision in the Limited Warranty does not mention the AAA. Thus, the AAA rules do not apply.

Answer and Counterclaim, etc. within twenty-one days of service of RWC's Motions, which rendered the Motions moot. The First Amended Verified Answer and Counterclaim, etc. (doc. 19) became the operative pleading.

RWC filed a Motion to Strike the First Amended Verified Answer and Counterclaim, etc. and Motion for More Definite Statement (docs. 24-26). Instead of a response, White filed a Supplemental Verified Answer and Counterclaim. RWC's Motions were granted (doc. 42).

As a more definite statement, White filed a "Second Amended Answer and Counterclaim" and "White's Second Amended Counterclaim Verified Class Action Complaint" (doc. 44). White appears to plead individual and class counterclaims: "Plaintiffs Virginia White and the putative class bring this Counterclaim against [RWC] requesting certification of the class, or alternatively, a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57" (doc. 44, p. 5-6). As grounds for the counterclaims, White alleges "Joint Enterprise and Conspiracy" against RWC and certain non-party "Horton entities" for engaging in an illegal conspiracy to sell homes subject to warranty provisions that are illegal, unconscionable and unenforceable, and violate building codes (Id., p. 7-10). She also alleges "Illegality, Unconscionability, Failure of Consideration, and Lack of Consideration" regarding certain provisions in the Limited Warranty (Id., at p. 10), and "Violation of Building Codes and Federal Law" (Id., p. 11).

White also alleges that the "proposed class consists of all D.R. Horton homeowners in Baldwin and Mobile Counties whose homes are less that ten (10) years old, together with a proposed statewide class" (Id., p. 11). She alleges that the elements for a Fed. R. Civ. P. 23(b) class – numerosity, commonality and typicality – are met, that she is an adequate class

---

representative, and that her counsel is an adequate class counsel (Id.). She requests the Court certify the proposed class pursuant to Rule 23(b)(2) (Id., p. 13).

White, and the "putative class", "alternatively", seeks a declaration that the Limited Warranty provisions identified in her counterclaim are "illegal, unconscionable, and unenforceable" under Alabama law, and unenforceable "as well as for lack and/or failure of consideration." (Id., p. 7, 9). And that the "Court should enter a declaratory judgment … declaring the Warranty provisions illegal and unconscionable under Alabama law" (Id., p. 13).

White also alleges in her Second Amended Answer and Counterclaim that by filing a Declaratory Judgment action in this Court, RWC knowingly waived arbitration and therefore, multiple issue are now moot due to waiver (Id). In her "Prayer for Relief", White requests "a finding that RWC knowingly waived arbitration" (Id., p. 13).

Earlier in this action, White filed a "Motion for Class Certification and for Declaratory and Injunctive Relief Pursuant to FRCP 23(b)(2) and 18 USC 2201 et seq." (doc. 18) supplement, (doc. 30). RWC's motion to stay consideration of the Motion was granted (doc. 43, p. 3). White subsequently moved to lift the stay and for consideration of her Motion (docs. 57, 58). Her motion to lift the stay was granted. However, the Motion for Class Certification was denied as premature (doc. 68). The Court stated that if "White's class action counterclaim survives the pending motions to compel arbitration and dismiss, survives the cross motions for summary judgment, and class action discovery is completed, White may then file a renewed motion for class certification." (doc. 68, p. 3).

RWC has now filed a Motion to Compel to Arbitration White's individual counterclaims, Motion to Stay this proceeding pending arbitration, and Motion to Dismiss the Putative Class

Counterclaims (doc. 45). RWC also filed a Motion for Summary Judgment on its Complaint for Declaratory and Injunctive Relief (doc. 47). The latter shall be addressed by separate order.

II. Analysis

A. Waiver of arbitration

In the Complaint, RWC seeks a declaration that this Court must determine the arbitrability of White's purported class claims and that White should be enjoined from pursuing class claims in arbitration (doc. 1). RWC does not seek any relief as to White's individual claims under the Limited Warranty.

However, White construes RWC's filing a Complaint in this Court as removing the arbitration to this Court and waiving arbitration under the Limited Warranty. White admits that RWC is seeking declaratory and injunctive relief to prohibit her from pursuing class claims in the arbitration but alleges that "the issue is moot due to RWC's decision to remove the case to Federal Court, thereby waiving it arbitration privilege" (doc. 44, p. 3). RWC alleges that White's Class Claims "stem from a limited warranty claim that [White] filed with RWC that was subsequently denied, and that is now being adjudicated in a pending arbitration proceeding …" (doc. 1, ¶ 2). In response, White wrote: "Admitted that an RWC Home Warranty exists. White denies that the matter is presently being adjudicated in arbitration because RWC waived any arbitration privilege as set forth above" (doc. 44, p. 3). As to RWC's allegation that it was compelled to file this action for declaratory and injunctive relief (doc. 1, ¶ 6), White wrote: "Denied that RWC was compelled to bring this Declaratory Judgment Action" to prevent White from filing class claims in the arbitration and that "the issue is moot because RWC waived arbitration by invoking federal jurisdiction." (doc. 44, p. 4, ¶ 6). In her Counterclaim for Class Action, White alleges that "[b]y filing a Declaratory Judgment Action in federal court, RWC

invoked litigation and knowingly waived its arbitration provision" and that "RWC's conduct in removing the case to federal court constitutes an intentional relinquishment of its right to arbitrate" (doc. 44, p. 7).

Also, in White's response to RWC's Motion for Summary Judgment (she did not file a response to the instant Motion to Compel Arbitration) (doc. 51), White argues that by filing this declaratory judgment action, RWC has waived the arbitration provision in the Limited Warranty. She argues that "RWC did not remain in arbitration. RWC did not merely request that the arbitrator [decide] a procedural issue. Instead, RWC filed a new federal lawsuit and asked this Court to decide the rights of the parties under the Limited Warranty" (Id., p. 13).[4]

Waiver occurs when a party voluntarily relinquishes or abandons a known right to arbitration. 1199Seiu United Healthcare Workers E. v. Kendall Healthcare Grp., Ltd., No. 25-11817, 2026 WL 369941, at *3 (11th Cir. Feb. 10, 2026) ("… the waiver inquiry focuses on whether a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right.") (quoting Morgan v. Sundance, Inc., 596 U.S. 411, 419, 142 S. Ct. 1708, 1711, 212 L.Ed.2d 753 (2022)). The Eleventh Circuit has explained that

> Our waiver doctrine is typically implicated when parties have "invoked the litigation machinery" before reversing course and claiming that arbitration was the proper avenue all along. Gutierrez v. Wells Fargo Bank, NA, 889 F.3d 1230,

---

[4] In RWC's Motion for Summary Judgment, it argues that in the Eleventh Circuit, when there is no clear and unmistakable indication that the parties agreed to delegate the issue of whether class claims may be arbitrated to the arbitrator, – such as in this case - the issue must be decided by the court not an arbitrator, (doc. 48) (citing JPay, Inc. v. Kobel, 904 F 3d 923, 935-936 (11th Cir 2018)). In response, White argues that by asking this Court to decide this issue and grant declaratory and injunctive relief, RWC has waived arbitration. White believes that the Limited Warranty's definition of an Unresolved Warranty Issue is broad enough to cover this issue and that RWC could have asked the arbitrator to decide (doc. 51, p. 12-13). Thus, White reasons that by not asking the arbitrator to decide an issue within the scope of the definition, and by filing this action, RWC has waived arbitration.

> 1236 (11th Cir. 2018) (alteration adopted and quotation omitted); see also Morgan v. Sundance, Inc., 596 U.S. 411, 142 S. Ct. 1708, 1711, 212 L.Ed.2d 753 (2022) ("Sometimes, [defendants] engage in months, or even years, of litigation—filing motions to dismiss, answering complaints, and discussing settlement—before deciding they would fare better in arbitration. When that happens, the court faces a question: Has the defendant's request to switch to arbitration come too late?").

Payne v. Savannah Coll. of Art & Design, Inc., 81 F.4th 1187, 1201 (11th Cir. 2023).[5]

"[A] key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration because the purpose of the waiver doctrine is to prevent litigants from abusing the judicial process." Rix v. Northcutt Dental Mgmt. Services, Inc., Civil Action No. 22-00406-KD-N, 2023 WL 5022685, at *6 (S.D. Ala. Aug. 7, 2023) (citing and quoting Warrington v. Rocky Patel Premium Cigars, Inc., No. 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023)) (internal quotations omitted)).

Here, RWC has not waived its right to arbitration of White's individual counterclaims. First, RWC participated in the arbitration of White's individual claims pursuant to her Demand for arbitration (doc. 1). Second, White has not advised the Court of any rule of procedure, statute, or case law which supports her position that an arbitration can be removed to federal court. Third, RWC's Complaint does not seek any relief as to White's individual claims or counterclaims. To the contrary, RWC seeks relief on the narrow question of "whether: (1) the Court or the arbitrator may determine the arbitrability of Defendant's purported Class Claims, and (2) [whether] the Class Claims may be pursued in arbitration pursuant to the terms of The Limited Warranty." (doc. 1, p. 7). Fourth, as to White's individual counterclaims, RWC did not

---

[5] The Supreme Court's decision in Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1714 (2022), eliminated the prejudice prong of the waiver analysis. ("As explained above, the usual federal rule of waiver does not include a prejudice requirement. So Section 6 instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA.") (abrogating S & H Contractors, Inc. v. A. J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990)).

invoke litigation before moving to compel arbitration. Instead, within weeks of May 22, 2026, when White filed her Second Amended Answer and Counterclaim, RWC filed the instant Motion to Compel Arbitration on June 5, 2026.

Under the totality of the circumstances, the Court is unable to find that RWC waived its right to arbitration. S&H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) ("A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right.").

Additionally, the Court previously addressed White's affirmative defense of waiver when considering whether to grant RWC's motion for more definite statement (doc. 42). In the Order granting the motion, the Court explained that

> Moreover, White appears to raise one affirmative defense that is not viable – Waiver pursuant to Fed. R. Civ. P. 8(c)(1). White argues that by filing this action for declaratory and injunctive relief, "RWC has invoked litigation and knowingly waived its arbitration provision" (doc. 19, p. 7) [First Amended Answer and Counterclaim]. White is correct that "waiver" typically requires a knowing relinquishment of the right to arbitrate by acting inconsistent with that right, such as filing a lawsuit instead of arbitrating. This occurs if a party files a lawsuit and then later tries to invoke the arbitration clause. But that is not the circumstance here, because the parties are already in arbitration.

(Doc. 42, p. 5) (bracketed text added).

B. Motion to compel White's individual counterclaims to arbitration

RWC moves pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., to compel arbitration of White's individual counterclaims (docs. 45, 46). The FAA provides that a party aggrieved by the failure of another party to abide by an arbitration agreement "may petition any United States district court which, save for such agreement, would have jurisdiction ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The Court of Appeals for the Eleventh Circuit recently explained that

> A threshold question in any motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., is which issues should be decided by the trial court and which issues should be decided by an arbitrator. To answer that question, courts have identified three distinct types of challenges to motions to compel arbitration: "(1) a challenge to the validity of the arbitration clause standing alone, (2) a challenge to the validity of the contract as a whole, and (3) a challenge to the very existence of the contract." Wiand v. Schneiderman, 778 F.3d 917, 924 (11th Cir. 2015) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444–45 n.1, 126 S. Ct. 1204, 1208 n.1, 163 L.Ed.2d 1038 (2006)). Courts must decide any challenges to the existence of the contract or to the validity of the arbitration clause standing alone before compelling arbitration. Id. However, an arbitrator must decide any challenges to the validity of the contract as a whole should the trial court find that a contract containing a valid arbitration clause exists and that some or all of the claims in the lawsuit are contemplated by the arbitration clause. Id.

Reiterman v. Abid, 26 F. 4th 1226, 1231 (11th Cir. 2022).

Since issues regarding the validity of the contract, i.e., the Limited Warranty, are determined by the arbitrator, the Court must determine the "validity of the arbitration clause standing alone" and decide any challenge to whether the Limited Warranty exists. Id.; see Lamonaco v. Experian Info. Sols., Inc., 141 F.4th 1343, 1346–47 (11th Cir. 2025) ("… arbitration is a matter of contract, and the FAA does not allow a court to compel arbitration unless it is satisfied that the parties agreed to arbitrate.") (citing Coinbase, Inc. v. Suski, 602 U.S. 143, 147–49, 144 S. Ct. 1186, 1192–93, 218 L.Ed.2d 615 (2024). Thus, "'[b]efore referring a dispute to an arbitrator, therefore, the court determines whether a valid arbitration agreement exists.'" Id. (quoting Coinbase, at 149, 144 S. Ct. at 1193 (alterations adopted) (citation and internal quotation marks omitted)).

The procedure is found in 9 U.S.C. § 4. Lamonaco, 141 F.4th at 1347. "If the existence of the agreement is not genuinely disputed, the court must compel arbitration." Id. (citing 9 U.S.C. § 4). "But if the opposing party raises a genuine dispute of material fact as to

contract formation, the court must hold a summary trial." Id. (citing 9 U.S.C. § 4; Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016)). "In short, the § 4 framework mirrors summary judgment." Id. (quoting Bazemore, 827 F.3d at 1333).

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' … Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" Bazemore, 827 F.3d at 1329; In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014) (an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'"). The presumption[6] in favor of arbitration, "does not apply to disputes concerning whether an agreement to arbitrate has been made.'" Bazemore, at 1329.

Thus, the Court first looks to whether the arbitration provision is an enforceable agreement to arbitrate. Burch v. P.J. Cheese, Inc., 861 F. 3d 1338, 1346 (11th Cir. 2017) ("When, as in this case, a party moves a district court to compel arbitration under the FAA, the court must first determine whether 'the making of the agreement for arbitration or the failure to comply therewith is ... in issue.'") (quoting 9 U.S.C. § 4). "[J]ust as 'state law generally governs whether an enforceable contract exists,' state law generally governs whether an enforceable 'agreement to arbitrate exists' as well." Id. at 1346 (citation omitted).

The Limited Warranty states: "This Limited Warranty shall be interpreted and enforced in accordance with the laws of the state in which the Home is located" (doc. 1-4, p.

---

[6] "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581 (2008) (citation omitted). In view of this policy favoring arbitration, the "FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration.'" Bazemore, 827 F.3d at 1329 (emphasis in original).

6, ¶ 3). Thus, Alabama law applies. "To prove the existence of a contract under Alabama law, the party seeking to enforce the contract must prove by a preponderance of the evidence: 'an offer[,] an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" Id. at 1345-1346 (citation omitted). Also, under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." Service Corp. Intern. v. Fulmer, 883 So. 2d 621, 633 n.15 (Ala. 2003).

"If, under a 'summary judgment-like standard,' the district court concludes that there 'is no genuine dispute as to any material fact concerning the formation of such an agreement,' it 'may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." Burch, 861 F. 3d at 1346 (citation omitted).

RWC argues that the "parties agreed, via the unambiguous language of the Limited Warranty, to arbitrate their disputes. Section IV. E. of the Limited Warranty specifically provides that the 'Limited Warranty provides for mandatory binding arbitration of Unresolved Warranty Issues[.]' . . . Indeed, there is clearly no dispute as to whether the parties are subject to an enforceable arbitration provision given that Ms. White initially filed her claims— both individual and class claims—in arbitration." (doc. 46, p. 5). In its reply, RWC argues that White cannot make a Demand for arbitration of a claim under the Limited Warranty, invoke arbitration pursuant to the terms of the Limited Warranty, and then later, when seeking to avoid the Limited Warranty's arbitration provision, contend that the Limited Warranty is not a binding agreement because there was no meeting of the minds between herself and RWC" (doc. 59, p. 6).

White did not respond to the Motion to Compel Arbitration. In that procedural posture and applying a "summary judgment like standard" Burch, 861 F. 3d at 1346, "the district

court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). However, White did respond to RWC's Motion for Summary Judgment. Because RWC construes White's response as a possible response to the Motion to Compel Arbitration (doc. 59, reply), the Court will do likewise.

The Court finds that there is no genuine dispute of material fact that the Arbitration Provision in the Limited Warranty is valid between RWC and White and that the Limited Warranty exists. See Reiterman, 26 F. 4th at 1231 (before compelling arbitration the Court must decide "(1) a challenge to the validity of the arbitration clause standing alone" and "(3) a challenge to the very existence of the contract."). In her Second Amended Answer, White admits "that an RWC Home Warranty exists" and that she obtained the Limited Warranty (Id., ¶ 2, 15). She admits that she "owns a home built by D.R. Horton" and that the "(home purchase agreement) contains warranty provision provided by the Residential Warranty Company" (doc. 44, p. 1). Importantly, White admits that because of construction defects she filed a claim with RWC under the terms of the Limited Warranty (Id., ¶ 17; doc. 44-1, White's affidavit: "I timely filed a warranty claim"). See Wisener v. CMH Homes, Inc., 2022 WL 17839010 (N.D. Ala. 2022).[7] As another indication of the validity of the Limited Warranty's arbitration provision, White seeks recovery of attorney's fees pursuant to the terms of that provision. Specifically, "Section E of the RWC Warranty provides that if a party commences litigation in violation of the Limited Warranty, that party shall reimburse the

[7] The Wiseners asserted that their electronic signature failed to prove assent to arbitration. However, the District Court found the Wiseners admitted that they entered into a valid arbitration agreement by pleading same in their Amended Complaint.

opposing parties for costs, expenses, and attorney's fees. Consequently, Plaintiffs and the Putative Class request an award of attorney's fees." (doc. 44, p. 7).

In her opposition to RWC's Motion for Summary Judgment, White does argue that the FAA, 9 U.S.C. § 2, preserves certain grounds at law or equity for invalidating an arbitration agreement. The statute provides that a "written provision" in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

White argues that RWC failed to meet its burden to establish a meeting of the minds or mutual assent because she and her father "could not have knowingly agreed to the Limited Warranty or arbitration clause before closing because they did not have the documents and did not know the arbitration clause existed" (doc. 51, p. 15-16).[8] White also asserts that the "Limited Warranty and Arbitration Clause" fail for lack of consideration and mutuality, and unconscionability, primarily because certain provisions in the Limited Warranty are favorable to RWC and Horton and unfair to homeowner (Id., p. 16-20).

However, White ratified and accepted the arbitration provision and the Limited Warranty when she pursued arbitration of her unresolved warranty claim. White filed a Verified Demand for Arbitration and Injunctive Relief in the arbitration proceeding and

---

[8] White alleges that there was no meeting of the minds. In her affidavit, she states that she and her father were not given the "packet of documents until after we signed the closing papers" and "[t]herefore, never saw the Limited Warranty before closing" and that the "warranty and arbitration clause were not explained to us and we had no knowledge it was in the pack of documents" (doc. 51-1), directly disputes RWC's statement that the Limited Warranty was provide to White "in connection with closing" and disputes that she assented to the Limited Warranty (doc. 51, p. 16).

alleged that RWC had improperly denied the warranty claim. (doc. 48-1) ("Dear Judge Floyd, Enclosed is the verified demand for arbitration by Virginia White." (Id., p. 31). By pursuing arbitration and accepting services under the arbitration provision for unresolved warranty issues in the Limited Warranty, White is contractually bound to the arbitration provision.[9] See Ford Motor Credit Co. v. Peseta, 2001 WL 617524, at *4 (M.D. Ala. May 14, 2001), aff'd 277 F.3d 1380 (11th Cir. 2001) ("Under the doctrine of ratification, a party, by his actions and acceptance of the benefits of a contract and by operating under that contract may ratify and confirm it."); see Franklin Structures, LLC v. Williams, 438 So. 3d 1218, 1230–31 (Ala. 2025) (finding that "because the Williamses accepted warranty services from Franklin and they have asserted express-warranty claims against Franklin, they are contractually bound by the arbitration provision contained in the warranty portion of the homeowner's manual."); Ex Parte Cont'l Roofing Co., LLC, --- So. 3d ---, 2026 WL 547654, at *6 (Ala. Feb. 27, 2026) ("It is certainly true that '[a]ssent [to a contract] must be manifested by something. Ordinarily, it is manifested by a signature. [However], [a]ssent may be manifested by ratification.' ") (underlining in original) (citations omitted).

Also, in this circumstance, where the question of whether the parties agreed to submit a particular dispute to arbitration, i.e., the question of arbitrability, or scope of the arbitration provision, has not been delegated to the arbitrator, the Court must determine "whether the underlying dispute falls within the scope of the arbitration agreement, i.e., a question of arbitrability. Attix v. Carrington Mortgage Services LLC, 35 F. 4th 1284. 1289 (11th Cir. 2022). In that regard, "the FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration.'"

---

[9] In the Verified Demand, White wrote that "RWC sent out an engineer who simply walked

Bazemore, 827 F.3d at 1329 (italics in original). "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351, 1366 (11th Cir. 2008) (citation omitted). Fulford v. GM Financial, 2025 WL 3902487, at *6 (S.D. Ala. Dec. 9, 2025), report and recommendation adopted, 2026 WL 244639 (S.D. Ala. Jan. 29, 2026) ("When determining the scope of an arbitration agreement, the Court must look to the factual allegations of the complaint and determine whether the claims alleged therein 'touch matters' covered by the arbitration provisions. … Additionally, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'") (internal and external citations omitted).

RWC argues that White's individual counterclaims "must be compelled to arbitration because they fall within the broad scope of the Limited Warranty's arbitration provision, which applies to any Unresolved Warranty Issue, including all 'demands, disputes, controversies and differences that may arise between the parties to this Limited Warranty.'" (doc. 46, p. 6). An "Unresolved Warranty Issue" is defined as follows:

> All requests for warranty performance, demands, disputes, controversies and differences that may arise between the parties to this Limited Warranty that cannot be resolved among the parties. An Unresolved Warranty Issue may be a disagreement regarding:
>
> a. the coverages in this Limited Warranty;
> b. an action performed or to be performed by any party pursuant to this Limited Warranty;
> c. the cost to repair or replace any item covered by this Limited Warranty.

(doc. 1-4, Limited Warranty, Section B.21.)

---

around the exterior of the home. Then RWC denied the claim." (doc. 1-2, p. 1).

White states in her "Statement of Facts" in the Counterclaim that "Plaintiff Virginia White's residence contains exposed anchor bolts and substantial floor deficiencies as reflected in the affidavits and exhibits attached hereto…" (doc. 44, p. 10). This claim falls within the coverage under the Limited Warranty. She also raises "additional factual allegation[s] regarding claims not paid" (Id., p. 12). White alleges that RWC's underwriter "closed approximately 99.3% of its claims without payment from 2020 through 2024" and that "[t]his extremely high claim-closure-without-payment rate supports [White's] allegations that the warranty program is not functioning as meaningful protection for homeowners, but instead operates as a mechanism to deny, avoid, or minimize responsibility for defective construction claims." (Id.). This allegation appears to be "a disagreement regarding: … b. an action performed or to be performed by any party pursuant to this Limited Warranty" (doc. 1-4, Limited Warranty, Section B.21.).

Thus, there are no doubts concerning the scope of arbitrable issues to resolve, and if there were, those doubts would be resolved in favor of arbitration. Mason v. Midland Funding LLC, 815 Fed. Appx. 320, 323 (11th Cir. 2020) ("The Federal Arbitration Act creates a 'presumption of arbitrability,' and under it, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (citation omitted).

B. Motion to stay pending resolution of the individual claims in arbitration

RWC moves the Court to stay this action in accordance with Section 3 of the FAA (doc. 46, p. 2). Section 3 provides that if the Court is satisfied that the issues involved in the litigation are referable to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had …" 9 U.S.C. § 3. In Smith v. Spizzitti, the Supreme Court resolved a circuit split and held that "[w]hen a district court finds a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of

the FAA compels the court to stay the proceedings." 601 U.S. 472, 478–79, 144 S. Ct. 1173, 1178, 218 L. Ed. 2d 494 (2024). Accordingly, the motion to stay is GRANTED.

C. Motion to dismiss White's putative class counterclaims

In White's "Second Amended Counterclaim Verified Class Action Complaint", she alleges claims against RWC on behalf of a class of DR Horton "homeowners in Baldwin and Mobile Counties" and alleges that she is an adequate class representative (doc. 44, p. 6-14). RWC argues that "because Ms. White cannot maintain individual claims in this case" i.e., her individual claims and counterclaims are subject to arbitration, "she cannot serve as a class representative, and the class claims must be dismissed" (doc. 46, p. 7) (collecting cases).

The Court finds that White is not an adequate class representative because her individual claims and counterclaims must be arbitrated. Several district courts have reached the same conclusion. Farfan v. SSC Carmichael Operating Co. LP, No. 18-CV-01472-HSG, 2019 WL 4933577, at *3 (N.D. Cal. Oct. 7, 2019) ("In light of the Court's finding that the class claims may not be arbitrated under Lamps Plus, and the Court's prior order finding that Plaintiffs' individual claims are compelled to arbitration, … the Court finds that it must dismiss the putative class claims. Given that Plaintiffs are required to arbitrate their claims, there is no class representative who can pursue the class claims. See Fed. R. Civ. P. 23(a). Plaintiffs do not explain how they can pursue class claims as representative plaintiffs when they are required to arbitrate their own claims, and the Court is aware of no authority that would permit this result.") (citation omitted); Puntillo v. Int'l Travel Network, LLC, No. 24-CV-08931-HSG, 2026 WL 1257755, at *6 (N.D. Cal. May 7, 2026) ("As the Court has already found, the class action bar is mutual, and it is enforceable under the FAA and California law. … Having found that Plaintiff's individual claims must be arbitrated, the Court

also finds that her putative class claims must be dismissed."); In re Managed Care Litig., 132 F. Supp. 2d 989, 999 (S.D. Fla. 2000), modified, 143 F. Supp. 2d 1371 (S.D. Fla. 2001), and aff'd sub nom. In re Humana Inc. Managed Care Litig., 285 F.3d 971 (11th Cir. 2002), rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003) ("Moreover, class action allegations do not prevent the named plaintiffs from being forced to compel arbitration when such plaintiffs have agreed to arbitrate all of their disputes with the defendants."); Weinberger v. Oxford Health Plans LLC, No. 06-20113-CIV, 2007 WL 9683688, at *3 (S.D. Fla. Sept. 28, 2007) (finding that "Weinberger's claims are subject to arbitation, and moreover, it appears – at a minimum – that Plaintiff Weinberger is not an adequate class representative in this case."). Accordingly, White's putative class counterclaims are dismissed.

III. Conclusion

Upon consideration, and for the reasons set forth herein, the Motion to Dismiss the Putative Class Counterclaims (doc. 45) is GRANTED. The Motion to Compel Arbitration of White's individual counterclaims (Id.) is GRANTED and the Motion to Stay this proceeding concerning White's individual counterclaims (Id.) is GRANTED. Accordingly, this action as to White's individual counterclaims is stayed and the parties shall, on or before **February 11, 2027,** file a **joint report** to advise the Court as to the status of the arbitration.

**DONE** and **ORDERED** this 13th day of November 2026.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**